# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MILTON WESTLEY, MICHAEL BELLE, DEJUAN WARD, SEDALE PERVIS, and CLIFFORD BRODIE. | No. 3:17-CR-171 (MPS) |

## MEMORANDUM OF OPINION

This opinion follows and explains my orders of June 10, 11, and 12 vacating the guilty pleas of the defendants in this case with respect to the RICO conspiracy charge.

On August 3, 2017, following an investigation into several shootings in New Haven throughout 2016, a grand jury returned a multi-count indictment charging six individuals with various offenses, including a racketeering conspiracy; violent crimes in aid of racketeering; offenses related to possession, transfer, and use of firearms; and possession with intent to distribute narcotics. (ECF No. 1.) In July and September of 2018, the defendants, Milton Westley, Michael Belle, Dejuan Ward, Sedale Pervis, Clifford Brodie, and Michael Via, appeared before me and changed their pleas to guilty to Count One of the Indictment, which charged them with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO) in violation of 18 U.S.C. § 1962(d). On April 22, 2019, I reviewed the plea agreements and transcripts of the change of plea hearings for Mr. Westley, Mr. Belle, and Mr. Ward and preliminarily concluded that these defendants had not admitted to conduct at their change of plea hearings that amounted to a RICO conspiracy. As a result, I ordered the parties to show cause why their guilty pleas should not be vacated because there was not a factual basis in the record at the time of the hearings to support their pleas. (ECF No. 322.) The Government responded on May 9, 2019 (ECF No. 325), but no defendant filed a response. On June 10, 2019, I vacated the

1

pleas and noted that I would issue an opinion setting forth my reasoning more fully. (ECF No. 335.) On June 11 and 12, 2019, I reviewed the transcripts and plea agreements for Mr. Pervis, Mr. Brodie, and Mr. Via. I determined that the same defects I had previously identified for Mr. Westley, Mr. Belle, and Mr. Ward applied for these defendants as well. I therefore vacated their pleas but provided them with seven days to file an objection. I now set forth my reasoning for doing so.

## I. Background

I assume familiarity with the procedural history of the case and set forth only the background information necessary to explain my reasoning.

Trial in this case was scheduled for October 17, 2018. In July and September of 2018, all six defendants notified the Government and the Court of their intention to plead guilty to Count One of the Indictment charging them with conspiracy to violate the substantive provisions of RICO.[1] The parties negotiated plea agreements, and the Court scheduled change-of-plea hearings.

### A. Plea Agreements

The six plea agreements each adhere to a similar structure. First, the agreements summarize the essential elements of a RICO conspiracy. They explain that, to be guilty of

---

[1] Three of the defendants also pled guilty to additional counts in the Indictment charging violations of 18 U.S.C. § 924(c). Dejuan Ward pled guilty to Count Five, charging him with carrying a firearm during and relation to a crime of violence. Clifford Brodie pled guilty to Count Six, charging him with carrying a firearm during and in relation to a crime of violence. Sedale Pervis pled guilty to Count Nine, charging him with carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). The defects I identified in the pleas apply only to the RICO conspiracy, and I therefore vacated Mr. Ward, Mr. Pervis, and Mr. Brodie's guilty pleas only as to Count One.

2

conspiracy to engage in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d), the following essential elements of the offense must be satisfied:

1. An enterprise, as described in the Indictment, existed on or about the time alleged in the indictment;
2. The enterprise was engaged in, or its activities affected, interstate or foreign commerce;
3. The defendant was employed by, or was associated with, the enterprise;
4. The defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise; and
5. The defendant knowingly agreed to participate in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity, as described in the Indictment; that is, through the commission of at least two charged racketeering acts within ten years of each other, or through causing or aiding and abetting the commission of two such racketeering acts or through agreeing that a co-conspirator would commit at least two such racketeering acts.

(*See* ECF Nos. 192 at 1–2, 203 at 2, 211 at 2, 220 at 2, 234 at 1–2, 243 at 2.)

Next, the agreements state the possible penalties for the offense, summarize the application of the United States Sentencing Guidelines, and present the parties' Guidelines Stipulations. The agreements state that the parties agree that, "[u]nder U.S.S.G. § 2E1.1(a)(2), each underlying act of racketeering is treated as a separate count of conviction" for purposes of sentencing. (ECF Nos. 192 at 4, 203 at 4–5, 211 at 5, 220 at 5, 234 at 4, 243 at 5.) The agreements then summarize a series of "groups" or "racketeering acts" attributable to each defendant. For all six defendants, the first "racketeering act" is a drug conspiracy. (*See, e.g.*, Belle Plea Agreement, ECF No. 234 at 4 ("For the first group, which is the drug conspiracy (the first racketeering act), the base offense level is 18 . . . .").) The "remaining racketeering acts" are shootings that occurred between 2015 and 2016.[2] The Government asserts that each shooting

---

[2] Specifically, the plea agreements refer to the following shootings: (1) a shooting at Brandon Shealy's house on January 23, 2016 (attributed to Mr. Westley and Mr. Belle); (2) a shooting of Marquis Freeman and Terrence Lee on May 27, 2016 (attributed to Mr. Westley, Mr. Pervis, and Mr. Via); (3) a shooting at Marquis Freeman in January of 2016 (attributed in the Government's statement of its position to Mr. Westley); (4) a shooting at Brandon Shealy's house on January

3

amounted to attempted murder. All of the defendants except Mr. Pervis and Mr. Via assert instead that the shootings attributed to them amounted to aggravated assault. (*E.g.*, Westley Plea Agreement, ECF No. 203 at 5 ("[T]he Government believes that for groups two through seven, the base offense level is calculated pursuant to [the Guideline for attempted murder]; the defendant disagrees and believes that the base offense level is calculated pursuant to [the Guideline for aggravated assault."); Via Plea Agreement, ECF No. 192 at 4–5 (referring to three "attempted murder[s]" in the parties' Guidelines stipulation).)

### B. Change of Plea Hearings

At each defendants change-of-plea hearing, I asked the Government to describe the elements of RICO conspiracy. The descriptions mirrored the explanations in the plea agreements in stating the elements that the Government would have to prove at trial. (*See, e.g.*, Westley Change of Plea Transcript, ECF No. 306 at 45–46; Belle Change of Plea Transcript, ECF No. 307 at 40–41.)

I next asked the Government to summarize the evidence that it expected to present at trial that would establish the defendants' guilt. For each defendant, the Government began by describing evidence showing the existence of "an enterprise in fact known as the Goodrich Street Boys or GSB." (*E.g.*, Westley Change of Plea Transcript, ECF No. 306 at 48.) The Government then summarized evidence showing that each defendant was a member of GSB and had agreed to participate in the affairs of the enterprise. (*Id.* at 48–49.) Finally, the Government described evidence of "racketeering activities." (*Id*. at 49–59.) In particular, the Government summarized

---

20, 2016 (attributed in the Government's statement of its position to Mr. Westley); (5) a shooting of James Harris on April 4, 2016 (attributed to Mr. Brodie, Mr. Belle, and, in the Government's statement of its position, Mr. Westley); (6) a shooting of Donald Harris on April 4, 2016 (attributed to Mr. Belle); a shooting of Pharoh Jackson on September 17, 2015 (attributed to Mr. Ward); and (7) a shooting of Damion Phillips on March 13, 2016 (attributed to Mr. Via).

4

evidence demonstrating that the defendants participated in a conspiracy to distribute narcotics and that they committed, aided and abetted, or agreed that a co-conspirator would commit, the shootings identified in their plea agreements. The Government did not proffer evidence to suggest that any of the shooting victims died, or that the members of GSB agreed or intended to kill the shooting victims. In some cases, the Government expressly acknowledged that the parties disagreed over whether the act of violence at issue amount to attempted murder. (*See, e.g.*, ECF No. 295 at 49 ("MR MARKLE: . . . As to the attempted murder of Pharoh Jackson, we have agreed to disagree, as Your Honor knows, so when I refer to it as attempted murder, that's the Government's position and will be at sentencing. We understand that [defense] counsel is going to argue that its an aggravated assault.").)

Following the Government's presentation, I canvassed the defendants about the details of the incidents that the Government described. The defendants each confirmed that they were members or associates of GSB and admitted facts demonstrating the contours of the enterprise. They also admitted that they participated in the affairs of GSB by conspiring with other members to distribute narcotics. Finally, I questioned them each about the shootings identified in their plea agreements. Each defendant admitted that he had committed, aided and abetted, or agreed that his co-conspirators would commit the shootings, and that the shootings were within the scope of the GSB conspiracy. I did not ask—and the defendants did not admit—whether they or any of their co-conspirators had specific intent to kill any of the shooting victims or intended victims.

**II.     Legal Standard**

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). A court must make that determination based on facts that "already exist in the record" at the time the plea is accepted or that are "put on

evidence demonstrating that the defendants participated in a conspiracy to distribute narcotics and that they committed, aided and abetted, or agreed that a co-conspirator would commit, the shootings identified in their plea agreements. The Government did not proffer evidence to suggest that any of the shooting victims died, or that the members of GSB agreed or intended to kill the shooting victims. In some cases, the Government expressly acknowledged that the parties disagreed over whether the act of violence at issue amount to attempted murder. (*See, e.g.*, ECF No. 295 at 49 ("MR MARKLE: . . . As to the attempted murder of Pharoh Jackson, we have agreed to disagree, as Your Honor knows, so when I refer to it as attempted murder, that's the Government's position and will be at sentencing. We understand that [defense] counsel is going to argue that its an aggravated assault.").)

Following the Government's presentation, I canvassed the defendants about the details of the incidents that the Government described. The defendants each confirmed that they were members or associates of GSB and admitted facts demonstrating the contours of the enterprise. They also admitted that they participated in the affairs of GSB by conspiring with other members to distribute narcotics. Finally, I questioned them each about the shootings identified in their plea agreements. Each defendant admitted that he had committed, aided and abetted, or agreed that his co-conspirators would commit the shootings, and that the shootings were within the scope of the GSB conspiracy. I did not ask—and the defendants did not admit—whether they or any of their co-conspirators had specific intent to kill any of the shooting victims or intended victims.

**II.     Legal Standard**

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). A court must make that determination based on facts that "already exist in the record" at the time the plea is accepted or that are "put on

the record at the time of the giving of the plea after inquiry of the defendant, the government, or other available sources of information." *United States v. Adams*, 448 F.3d 492, 499 (2d Cir. 2006) (quotation marks omitted). "The district court's obligations under Rule 11(b)(3) continue until it has entered judgment. If it decides there was no factual basis for a guilty plea after accepting it, the court should vacate the plea and enter a plea of not guilty on behalf of the defendant." *United States v. Culbertson*, 670 F.3d 183, 186 (2d Cir. 2012), *as amended* (Feb. 16, 2012) (quotation marks and alterations omitted). Because "a sufficient factual basis must be determined at the time the plea is accepted, . . . an after-the-fact hearing will not suffice." *Adams*, 448 F.3d at 500.

### III. Discussion

The defendants pled guilty to Count One of the Indictment, charging them with conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d). Substantively, RICO provides

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Section 1962(d) further provides that "[i]t shall be unlawful for any person to conspire to violate any" of the substantive RICO provisions. "RICO's conspiracy provision thus proscribes an agreement to conduct or to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity." *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009). Section 1961(1) sets out a list of criminal offenses that constitute "racketeering activity." "This list is exclusive." *Harvey v. Harvey*, 931 F. Supp. 127, 130 (D. Conn. 1996), *aff'd*, 108 F.3d 329 (2d Cir. 1997). A "'pattern of racketeering activity' requires at least two acts of racketeering activity . . . within ten years." 18 U.S.C. § 1961(1). The Government may therefore prove that a defendant conspired to engage in a "pattern of racketeering activity" either by (1)

showing that the defendant personally committed or agreed to commit two of the predicate acts identified in the statute, or (2) showing that the defendant "agreed to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise." *United States v. Nguyen*, 255 F.3d 1335, 1341 (11th Cir. 2001); *see also United States v. Applins*, 637 F.3d 59, 72–75 (2d Cir. 2011) (summarizing the elements of RICO conspiracy).

Here, the Government accurately described the elements of RICO conspiracy in the plea agreements and orally at the change of plea hearings. The facts presented at the hearings, however, did not satisfy those elements. The plea agreements referred to the drug distribution conspiracy and shootings as "racketeering acts." In summarizing the evidence it would present at trial, the Government focused only on those specific acts to establish a pattern of racketeering activity. (*See, e.g.*, ECF No. 306 at 59 ("MR KALE: . . . Mr. Westley agreed with his fellow GSB members . . . that they would commit racketeering activities. Specifically, they agreed that [Mr. Westley] and others would commit the act of drug trafficking and drug sales and, also, they would commit these acts of violence. We're specifically going to be going over two specific acts of violence here, Your Honor, even though the agreement was before this and transcended this."); ECF No. 307 at 41 ("THE COURT: What are the racketeering acts that the Government contends that Mr. Belle either participated in or agreed would be committed? MR. KALE: Your honor, basically the government would contend that the first racketeering act would be drug dealing with the group GSB . . . . The second act would be a shooting - - the second act, through acts of violence, related to an agreement among the group to shoot at rival gang members . . . . And specifically, we would be alleging Mr. Belle was a participant in the January 23, 2016 shooting of Brandon Shealy. . . And, second, that he knew that Mr. James Harris was a member

7

of the West Read Street gang and that he was a target of GSB . . . . THE COURT: . . . So the racketeering act[s] that the Government would propose to prove with respect to Mr. Belle would be the drug dealing, the January 23rd, 2016 shooting of Shealy, and also James Harris? MR. KALE: Yes, Your Honor.").) I similarly focused on these incidents in canvassing the defendants. In response to my questioning, each defendant acknowledged that he participated in the shootings described in his plea agreement or that he was aware and agreed that they would occur.

But "shootings" and "acts of violence" are not racketeering acts under RICO. Rather, the statute includes "any act or threat involving *murder* . . . which is chargeable under State law . . . ." 18 U.S.C. § 1961(1) (emphasis added). The Government contends that the shootings identified in the plea agreements amount to attempted murder. It is well settled that "an attempt to commit murder requires a specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351 n. * (1991) (quotation marks omitted); *see also State v. Lopez*, 280 Conn. 779, 814 (2007) ("A verdict of guilty of attempted murder requires a finding of the specific intent to cause death."). Not every shooting constitutes attempted murder, even when committed under circumstances in which death is very likely to occur. *See United States v. Stroman*, 420 App'x 100, 105 (2d Cir. 2011) (holding that a district court committed clear error because it applied the Sentencing Guideline for attempted murder without explicitly finding that the defendant had specific intent to kill, even where the district court had stated "looking at that videotape, it was obvious Mr. Stroman was running into this bodega for the very specific purpose of shooting whoever it was he was aiming his gun at and had he hit him, he might very well have killed him."). The Government did not assert that the defendants had specific intent to kill or that they knew their co-conspirators had such intent. I did not ask the defendants about their intentions in my plea canvass.

Nor were the facts about the shootings elicited at the plea canvass sufficiently detailed and unequivocal to warrant a reasonable inference of intent to kill. For example, two of the alleged racketeering acts attributed to Mr. Belle involved occasions where GSB members or associates pulled up outside the house of Brandon Shealy late at night and fired shots at the house. (ECF No. 307 at 45–47, 60–61.) While firing shots at a house from the street late at night is a dangerous, reckless, and reprehensible act—and certainly could result in death—it does not, by itself, show intent to kill. By admitting only that they were involved in "shootings," then, the defendants did not admit that they or any co-conspirator agreed to commit attempted murder. Indeed, four of the defendants expressly denied in the plea agreements that the shootings constituted attempted murder, arguing that the incidents amounted only to aggravated assault—a crime that does not require specific intent to kill and that may not serve as a predicate act under RICO.[3] *See Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y.), *aff'd* 800 F.2d 1128 (2d Cir. 1986) ("Assault is not a crime that can constitute a predicate racketeering act under RICO . . . ."). As a result, the defendants admitted to only one predicate racketeering act (drug trafficking), which is insufficient on its own to sustain their pleas. *See* 18 U.S.C. § 1961(5) (requiring "at least two acts of racketeering activity" to establish a "pattern of racketeering activity").

---

[3] Two of the defendants, Mr. Pervis and Mr. Via, acknowledged in their plea agreements that the shootings attributed to them constituted attempted murder. (*See* ECF Nos. 192 at 4–5, 211 at 6.) Neither admitted facts at the plea hearings that would suggest that they or their co-conspirators had specific intent to kill, nor did they admit that murder was within the scope of the GSB conspiracy. The elements of attempted murder were not described at the hearing, and I cannot conclude that they knowingly admitted that they committed or agreed that a co-conspirator would commit attempted murder without assurance that they were apprised of the elements of that crime.

The Government argues that there was a factual basis for the defendants' pleas because Count One of the Indictment "fully detailed the Government's allegations relating to the RICO conspiracy" and the defendants "stated on multiple occasions that they wished to plead guilty to Count One." (ECF No. 325 at 10.) But the Indictment may not "be bootstrapped in this fashion to provide a factual basis to support a guilty plea when [the] defendant never admitted to the elements necessary for conviction but merely agreed to plead guilty to them." *Adams*, 448 F.3d at 501. True, where the charge is "uncomplicated, the indictment detailed and specific, and the defendant's admission unequivocal, then the reading of the indictment and admission of the facts described in it satisfies Rule 11." *Id*. (quotation marks and alterations omitted). But RICO conspiracy is not the type of "uncomplicated" charge that would allow Rule 11 to be satisfied in this manner, and in any event, I did not read the Indictment to any of the defendants or ask them if they admitted the facts described in it. (*See, e.g.*, Brodie Change of Plea Transcript at 9 ("THE COURT: . . . Have you had enough time to discuss with him the factual basis for the pleas to these two charges? MR. BROWN [counsel for Mr. Brodie]: Well, Your Honor, as you know, these are some legally - - THE COURT: Complex. MR BROWN: - - issues. THE COURT: Yes, that's why I asked. MR BROWN: So I've taken extra time to spend with him. I believe he understands. I hope he understands. They're hard for me to understand, quite frankly. To my belief, I think he understands, but I've done my best.").)

The Government next asserts that the defendants' plea colloquies were adequate to establish a factual basis for their guilt because "it was unnecessary for any of the defendants to admit that he participated in any predicate act of racketeering or any overt act to be found guilty of the RICO conspiracy charged in Count One." (ECF No. 325 at 12.) It is enough, the Government argues, that the defendants admit that they agreed that they or their co-conspirators

10

would commit "*the types of crimes* that constitute the pattern of racketeering activity in the indictment." (*Id.* at 8.) Even if the Government's theory is correct, none of the defendants admitted that they or their co-conspirators agreed to commit attempted murder or even that murder was one of the "general criminal objective[s]" of GSB. *United States v. Zemlyansky*, 908 F.3d 1, 11–12 (2d Cir. 2018). As explained above, no defendant acknowledged that they or their co-conspirators acted or agreed to act with specific intent to kill—either as to a specific shooting or more generally. Four of the defendants implicitly denied that they or their co-conspirators acted with such intent by asserting that the shootings constituted only aggravated assault. Further, the shootings attributed to each defendant were repeatedly described as "racketeering acts" in the plea agreements and at the plea hearings notwithstanding the defendants' positions that the shootings were aggravated assaults. The defendants were therefore erroneously led to believe that a shooting or a generic "act of violence," even one amounting only to assault, could serve as a predicate act under RICO. (*E.g.*, ECF No. 295 at 43–44 ("As I said, the primary proof as to Mr. Ward pertains to marijuana . . . . And, obviously, to commit certain acts of violence . . . .").) Rule 11 is "designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Adams*, 448 F.3d at 499–500 (quotation marks omitted). I will not draw tenuous inferences to sustain the defendants' pleas where the conduct that they knowingly admitted does not satisfy the elements of the crime to which they pled.

Finally, the Government argues that, even if the factual record at the time of the pleas was not sufficient, I could decline to vacate the pleas based on facts developed after the plea hearings. Alternatively, they ask that I hold an additional hearing to augment the record. The Government contends that language from the Second Circuit's recent decision in *United States v.*

11

*Lloyd*, 901 F.3d 111 (2d Cir. 2018), "supplants *United States v. Adams*. . . ." (ECF No. 325 at 1.) In *Lloyd*, the court explained that Rule 11(b)(3) requires district courts to "determine that there is a factual basis for [a defendant's] plea" but noted that it need not necessarily do so "at the plea colloquy, but at latest *before entering judgment* on a guilty plea." *Lloyd*, 901 F.3d at 115 (alteration omitted). The Government's argument is unpersuasive for two reasons. First, the language the Government cites from the *Lloyd* opinion could not "supplant" the clear holding from *Adams* "that a sufficient factual basis must be determined at the time the plea is accepted, thus an after-the-fact hearing will not suffice." *Adams*, 448 F.3d at 500; *see United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) (noting that a panel of the Second Circuit is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court.") Second, the Government overlooks the interplay between Rule 11(b)(3) and 11(b)(1)(G). As the *Lloyd* court succinctly explained

> Rule 11(b)(1)(G) calls for the district court to inform the defendant of and ensure "that the defendant understands . . . the *nature of each charge* to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G) (emphasis added). Rule 11(b)(3) focuses on the court's own careful determination, before entering judgment on a guilty plea, "that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3).

*Lloyd*, 901 F.3d at 119. Even if I could cobble together a factual basis for the defendants' pleas under the theory of liability the Government now presents, I could not conclude that they entered those pleas knowingly and voluntarily I failed to accurately apprise them of the elements of the offense by suggesting that conduct not amounting to racketeering acts was sufficient to satisfy the statute. *McCarthy v. United States*, 394 U.S. 459, 466–67 (1969) ("[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts . . . . Requiring this examination of the relation between the law and the acts the defendant admits having committed

is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." (quotation marks and footnotes omitted)).

For the foregoing reasons, I concluded that it was necessary to vacate the defendants' pleas and enter pleas of not guilty on their behalf. This case is now scheduled for trial beginning on July 31, 2019.[4]

Finally, I note that Mr. Pervis recently filed a motion to extend the time for objecting to my ruling vacating his plea, which I granted. (ECF No. 341.) Mr. Via faces an objection deadline of today. I am nonetheless issuing this ruling now—without prejudice to their rights to file any such objections—to give the parties an explanation of the reasons for my June 10–12 orders in advance of the in-court status conference scheduled for tomorrow.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
June 19, 2019

---

[4] Nothing in this opinion should be construed as a finding as to any matter presented at the *Fatico* hearings held on November 28, 2018 and January 2, 2019.